# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

DEBORAH S. GRAVES, Individually and as adoptive parent, guardian, and next friend of D.R.S., a minor,

Plaintiff,

vs.

UNITED STATES OF AMERICA,

Defendant.

No. C23-18-LTS-KEM

**MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS**

## I. INTRODUCTION

This case is before me on a motion (Doc. 12) by defendant United States of America (the Government) to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff Deborah S. Graves has filed a resistance (Doc. 14). Oral argument is not necessary. *See* Local Rule 7(c).

## II. BACKGROUND AND PROCEDURAL HISTORY

Graves, individually and as adoptive parent, guardian and next friend of D.R.S., a minor, filed a complaint (Doc. 1) on March 23, 2023. Graves asserts a claim for "Negligence/Premises Liability" under the Federal Tort Claims Act (FTCA). She alleges that D.R.S. was skateboarding on a paved road at Sugar Bottom Campground, which is managed by the United States Army Corps of Engineers (USACE), on June 17, 2020, when the wheel of his skateboard caught on a crack and caused him to fall, resulting in injuries. Doc. 1 at 2. Graves alleges that the Government was negligent in the following ways:

    a. Failing to reasonably inspect the campground for dangerous conditions;

> b. Failing to take reasonable measures to maintain the area of the campground;
>
> c. Failing to give adequate warning to lawful visitors and business invitees of the dangerous condition at the campground;
>
> d. Failing to take adequate measures to prevent lawful visitors and business invitees from traversing over the dangerous condition of the campground; and
>
> f. Failing to act as a reasonably prudent owner and/or possessor of the real property under all circumstances then and there existing.

Doc. 1 at 3. Graves seeks damages for past and future medical expenses, past and future physical pain and suffering, past and future loss of full mind and body and any other element of loss recognized by state or federal law not specifically mentioned in her complaint. *Id.*

On June 23, 2023, the Government filed a motion (Doc. 12) to dismiss Graves' complaint. Graves filed a resistance (Doc. 14) on June 30, 2023 and the Government filed a reply (Doc. 16) on July 7, 2023.

### III.    APPLICABLE STANDARDS

The Government seeks dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Graves, as the party invoking federal jurisdiction, carries the burden of establishing that jurisdiction exists. *Jones v. United States,* 727 F.3d 844, 846 (8th Cir. 2013).

Motions under Rule 12(b)(1) may assert a "facial" or "factual" attack on jurisdiction. *Moss v. United States,* 895 F.3d 1091, 1097 (8th Cir. 2018). A facial attack "asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction." *Davis v. Anthony, Inc.,* 886 F.3d 674, 679 (8th Cir. 2018) (citation and internal quotation marks omitted). When considering a facial attack, "the court restricts

itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id*.

A factual attack "challenges the veracity of the facts underpinning subject matter jurisdiction." *Id*. In evaluating a factual attack, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id*. When a factual attack is made, "the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence." *Moss,* 895, F.3d at 1097. In this case, the Government's challenge is a factual attack on subject matter jurisdiction.

## IV. ANALYSIS

### A. *The Discretionary Function Exception to the FTCA*

The Government argues that "[p]laintiff's claim is barred by the discretionary function exception to FTCA liability." Doc. 12-1 at 10. The FTCA provides a limited waiver of sovereign immunity for claims against the United States for money damages for:

> [P]ersonal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA's limited waiver of sovereign immunity is subject to various exceptions. *See* 28 U.S.C. § 2680. When an exception applies, "the bar of sovereign immunity remains." *Dolan v. United States Postal Serv.,* 546 U.S. 481, 485 (2006). The discretionary function exception is contained in 28 U.S.C. § 2680(a), which states:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary

3

> function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines,* 467 U.S. 797, 814 (1984). The discretionary function exception is "a jurisdictional bar to suit." *Alberty v. United States,* 54 F.4th 571, 575 (8th Cir. 2022).

A two-part test governs whether the discretionary function exception applies. *Croyle v. United States,* 908 F.3d 377, 381 (8th Cir. 2018). First, the court "consider[s] whether the suit concerns 'acts that are discretionary in nature, [that is] acts that involve an element of judgment or choice.'" *Compart's Boar Store, Inc. v. United States,* 829 F.3d 600, 604 (8th Cir. 2016) (quoting *United States v. Gaubert,* 499 U.S. 315, 322 (1991)). With respect to the first part of the discretionary function test, the court "must determine whether the challenged conduct involves the failure to follow a mandatory statute, rule or regulation." *Tonelli v. United States,* 60 F.3d 492, 496 (8th Cir. 1995). In other words, "[g]overnment employees act with discretion unless they are following a regulation or policy that is 'mandatory and … clearly and specifically define[s] what the employees are supposed to do.'" *Compart,* 829 F.3d at 605 (quoting *C.R.S. ex rel. D.B.S. v. United States,* 11 F.3d 791, 799 (8th Cir. 1993)).

Second, the court "determine[s] whether the government acted or based its decision 'on considerations of public policy.'" *Id.* (quoting *Gaubert,* 499 U.S. at 323). "The discretionary decision need only be 'susceptible to policy analysis,' regardless of whether the employee actually engaged in conscious policy-balancing, and regardless of 'whether … the discretion involved was abused.'" *Alberty,* 54 F.4th at 575 (quoting *Buckler v. United States,* 919 F.3d 1038, 1045 (8th Cir. 2019) and 28 U.S.C. § 2680(a)). When the first part of the test is satisfied, the court "presume[s] that the governmental

4

action involved considerations of public policy," and "[i]t is the plaintiff's burden to rebut that presumption." *Compart,* 829 F.3d at 605.

## B. Discussion

Before analyzing the two steps of the discretionary function exception test, I will first address Graves' argument that the exception cannot apply because the USACE did not exercise due care. Doc. 14-3 at 2, 6. In disputing this premise, the Government relies on the Fifth Circuit's holding that:

> [Section 2680(a)] contains two clauses, separated by the disjunctive "or", which set forth two separate exceptions to the FTCA. The first clause, excepting claims based on the execution of a statute or regulation, requires for its application that the actor have exercised due care. The second clause, excepting claims based on the performance of a discretionary function, has no such function.

*Lively v. United States,* 870 F.2d 296, 297 (5th Cir. 1989). The Eighth Circuit has adopted similar reasoning, holding that when the discretionary function exception applies, it "applies regardless of whether the government employee abuses that discretion." *Buckler,* 919 F.3d at 1045 (citing 28 U.S.C. § 2680(a)). Based on *Lively* and *Buckler*, the Government's position is correct. Under the second clause of § 2680(a), a showing that USACE's employees exercised due care is not necessary for the discretionary function exception to apply.

### 1. The First Step

The Government contends that under the first step, "each category of purportedly negligent conduct alleged by Plaintiff 'involves an element of judgment or choice instead of being controlled by mandatory statutes or regulations.'" Doc. 12-1 at 12 (quoting *Alberty,* F.4th at 575). Graves argues that the allegedly negligent conduct was not discretionary because "said conduct was expressly provided for by the [USACE's]

5

policies as published in its Engineering Manual." Doc. 14-3 at 7. I will address each category in turn.

Beginning with Graves' claim that the USACE "fail[ed] to reasonably inspect the campground for dangerous conditions," the Government argues that because the method of the inspection was left to the discretion of employees, USACE's inspection requirement was discretionary in nature. Doc. 12-1 at 18. Graves argues that the Engineering Manual prescribes specific conduct in inspections and that the use of the word "shall" throughout the Engineer Manual removes employee discretion when performing inspections. Doc. 14-3 at 7-8.

The Eighth Circuit has addressed the question of when the discretionary function exception applies to mandatory government inspections. When government inspectors are subject to precise regulations that mandate the specific steps they must take during their inspections, they are not acting with discretion. *McMichael v. United States,* 856 F.2d 1026 (8th Cir. 1988). In *McMichael,* Department of Defense policies mandated that inspectors follow a detailed 51-part checklist when inspecting a plant. *Id.* In this particular instance, an inspector failed to follow the 16th item on the checklist, allegedly causing the plaintiff's injury. *Id.* at 1033. The court held that the regulations were so precise that the inspector did not have discretion in performing the inspection. *Id.* By contrast, if an inspection policy "lacks language dictating mandatory steps" and "simply identifies the target areas for investigation," the inspector retains discretion such that the first step of the discretionary function exception applies. *Buckler v. United States,* 919 F.3d 1038, 1048 (8th Cir. 2019); *see also Layton v. United States,* 984 F.2d 1496, 1503 (8th Cir. 1993) ("We note that this case is unlike cases in which a government inspector is controlled by precise regulations establishing specific steps he is required to perform in his inspections" when the inspector based his inspections on "his prior experience with the contractors at issue, their expertise, their safety records, the nature of the job, and his other responsibilities.").

6

In this case, as in *Buckler* and *Layton*, USACE's Engineer Manual "lacks language dictating mandatory steps" and instead "identifies the target areas for investigation." The manual contains some mandatory language, such as: (1) "[r]outine daily reporting of project conditions **shall be performed** at the project level to ensure that high levels of customer service are maintained," (2) "[a]n in-house annual evaluation **shall be conducted** to verify the safety and functional operation of all recreational facilities," and (3) "[a Project Delivery Team] consisting of division, district, and onsite personnel **shall conduct** an overall evaluation of each project's recreation program operational efficiency." *See* Doc. 14-1 at 1-2 (emphasis added). However, the Engineer Manual leaves considerable discretion as to the precise steps a USACE employee must take to conduct these inspections. *Id*. Darren Schneider, a Natural Resources Specialist for USACE, testified as follows:

> There is no directive prescribing how roads must be evaluated or specifying what constitutes a safety-related deficiency. If USACE personnel, in the exercise of their judgment, determine that a safety-related deficiency exists, USACE personnel report it through a work order system so that it may be addressed prior to the campground being opened to the public.

Doc. 12-2 at 5 ¶ 13. Graves has offered no evidence to the contrary.

While the Engineer Manual provides criteria for classifying roadways as poor, fair, good, or excellent, these criteria are guidelines – not specific directives for classifying the roads. Doc. 12-5 at 1. Further, the roadway classification categories do not specifically mention safety or dangerous conditions as factors in the evaluation. *Id.* Thus, the manner of inspecting the cracked road at issue in this case, and determining whether it constituted a dangerous condition, was left to the discretion of USACE employees. Graves' claim that USACE "fail[ed] to reasonably inspect the campground for dangerous conditions" addresses "acts that are discretionary in nature" and is therefore subject to the first step of the discretionary function exception. *Compart,* 829 F.3d at 604.

7

As for Graves' claim that USACE "[f]ail[ed] to take reasonable measures to maintain the area of the campground" and "fail[ed] to properly maintain the condition of the public areas located within the campground," the Government argues that maintenance of the campground and its roadways was discretionary because "[n]o agency manual, policy, or guideline required USACE to take any particular course of action in response to cracked roadway pavement." *Id.* at 14. The Government further argues that, despite the Engineer Manual's statement that "[s]afety-related deficiencies shall be corrected prior to opening the recreation area or facility for public use," the identification of safety-related deficiencies is discretionary and no evidence points to any safety-related deficiencies being identified during the campground's annual inspection. *Id.* n.5.

Graves counters that the Engineer Manual's use of the word "shall" removes USACE's discretion in maintaining the campground and roadway. Doc. 14-3 at 8 (quoting manual's statement that "[s]afety-related deficiencies shall be corrected prior to opening the recreation area or facility for public use."). However, even when correcting a safety issue is mandatory, the correction of those issues "flow[s] from an antecedent determination—a determination necessarily rooted in discretion." *Buckler,* 919 F.3d at 1049; *see also Judy v. U.S. Dep't of Lab.,* 864 F.2d 83, 84 (8th Cir. 1988) (holding that statutory and regulatory provisions mandating OSHA to issue a citation for a safety issue that injured the plaintiff necessarily required OSHA to first find that the safety issue was present, the determination of which was subject to discretion).

Here, the relevant portion of the Engineer Manual states that "[s]afety-related deficiencies shall be corrected prior to opening the recreation area or facility for public use." Doc. 12-2 at 4 ¶ 11; Doc. 12-4 at 7-8. Schneider testified that "[t]here is no directive prescribing how roads must be evaluated or specifying what constitutes a safety-related deficiency." Doc. 12-2 at 5 ¶ 13. Again, Graves has offered no evidence to the contrary. Thus, the determination of whether the cracked roadway at issue constituted a safety-related deficiency was an "antecedent determination" that was "rooted in discretion." *Buckler,* 919 F.3d at 1049. In its inspections, the USACE used this

discretion and ultimately did not find that the cracked pavement was a safety-related deficiency. Doc. 12-2 at 5. Had it made such a determination, and then failed to correct the deficiency, Graves' argument could be successful. However, because USACE did not first make the antecedent determination that the cracked pavement was a safety-related deficiency, this claim is subject to the first step of the discretionary function exception.

Regarding Graves' allegation that USACE "fail[ed] to give adequate warning to lawful visitors and business invitees of the dangerous condition at the campground," the Government argues that posting warnings about the cracked pavement was discretionary because the Engineer Manual leaves it to the discretion of USACE employees whether (and where) to post warning signs. Doc. 12-1 at 15. Graves argues that the Engineer Manual prescribed a specific course of action for warning visitors about dangerous conditions, and thus such warnings are not discretionary. Doc. 14-3 at 9.

The Engineer Manual leaves significant discretion for USACE employees concerning warning signs:

> Signs shall be provided only where needed to regulate traffic, warn of hazardous conditions, establish restrictions, and provide information. The number of signs should be kept at a minimum. Symbol signs shall be used whenever feasible. Detailed guidance on all traffic, warning and information signs and their placement shall conform to EP 310-1-6a and 6b, the Corps "Sign Standards Manual."

Doc. 12-2 at 7. While Graves is correct that the Engineer Manual uses "shall" multiple times to prescribe placement of signs, this section is also filled with discretionary language. For example, the direction that "[s]igns shall be provided" is immediately followed by the discretionary language of "only where needed." *Id.* The manual states that "[s]ymbol signs shall be used," followed by "whenever feasible." *Id.* Determining where signs are needed or when the placement of signs is feasible are both discretionary. Further, placement of signs to warn of "hazardous conditions" again first requires a finding that a "hazardous condition" exists, a determination which is as "rooted in discretion" as the previously discussed "safety-related deficiency" determination.

9

*Buckler,* 919 F.3d at 1049. Thus, the first step of the discretionary function exception test also applies to this claim.

The Government advances a similar argument in response to Graves' allegation that the USACE "fail[ed] to give adequate measures to prevent lawful visitors and business invitees from traversing over the dangerous condition of the campground." Doc. 12-1 at 15. The Government contends that erecting fencing or barriers for safety purposes is left to USACE employee discretion and that the Engineer Manual provides that fencing should be used minimally. Doc. 12-1 at 15. Graves again responds that the language in the Engineer Manual is mandatory and removes discretion from deciding whether to take measures to prevent visitors from traversing over dangerous conditions. Doc. 14-3 at 9. The Engineer Manual states:

> Fencing should generally only be constructed for access control, traffic control, screening, and safety purposes. Care must be exercised in determining the type and location of fencing. Where fencing is necessary it should be of the minimum height and design possible to be unobtrusive and still accomplish the required function.

Doc. 12-4 at 6.

Again, I find that the Engineer Manual leaves significant discretion to USACE employees to determine whether to install measures such as fencing or barriers that prevent visitors from traversing over dangerous conditions. In stating that "[c]are must be exercised in determining the type and location of fencing" and "[w]here fencing is necessary," the manual uses discretionary language rather than directing with precision how and when USACE employees must construct fencing. In addition, the determination of whether fencing is required for safety purposes again, in the first instance, requires an antecedent determination that a dangerous condition exists. *Buckler,* 919 F.3d at 1049. As such, the first step of the discretionary function exception also applies to this claim.

Finally, regarding Graves' claim that the USACE "fail[ed] to act as a reasonably prudent owner and/or possessor of the real property under all circumstances then and there existing," the Government argues that Graves did not identify any statute, regulation

10

or rule that mandates how the USACE should behave as a reasonably prudent owner or possessor of real property, and thus this conduct is discretionary in nature. Doc. 12-1 at 15-16. Graves simply reiterates her previous arguments that the USACE had a duty to inspect for dangers, maintain the roadways, give adequate warnings and prevent visitors from traversing over dangerous conditions. Doc. 14-3 at 9. As explained above, the first step of the discretionary function exception applies to each of these categories. Graves fails to identify any further "mandatory statute, rule or regulation" specifically directing USACE employees how to act as "a reasonably prudent owner and/or possessor of the real property." *Tonelli,* 60 F.3d at 496. As such, the first step of the discretionary function exception also applies to this category.

### 2. *The Second Step*

Next, I must determine whether the USACE "acted or based its decision 'on considerations of public policy.'" *Gaubert,* 499 U.S. at 323. Because the first step of the discretionary function exception test applies to each of Graves' claims, I will "presume[] that the governmental action involved considerations of public policy" and "[i]t is the plaintiff's burden to rebut that presumption." *Compart,* 829 F.3d at 605.

The Eighth Circuit has stated that "the concept of policy considerations is broadly inclusive and sweeps into its folds many seemingly narrow decisions." *Buckler,* 919 F.3d at 1052. As such, the court has considered "discretion in the context of safety inspections or safety warnings as susceptible to policy choice due to the need to balance safety against governmental efforts and costs and the need for professionals on the ground to adapt to the conditions they face in determining how to expend limited resources in the efforts to identify dangers." *Buckler,* 919 F.3d at 1051. For example, an agency's "decision as to whether or not to issue warnings is susceptible to policy analysis, since it involves balancing safety against cost: the more effort the [agency] expended to discover dangers and to warn contractors of them, the greater the safety benefit but also the greater the cost to the government." *Layton v. United States*, 984 F.3d 1496, 1504 (8th Cir. 1993).

11

In *Metter v. United States*, 785 F.3d 1227 (8th Cir. 2015), the court held that maintenance, such as replacing guardrails, was susceptible to a balancing of public policy objectives such as allocation of funds, the timing of repairs and maintenance and safety concerns. *Id.* at 1232-33.

Graves relies on *Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir. 1986) to argue that "where the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the [discretionary function] exception falls away." *Id.*; Doc. 14-3 at 10. *Aslakson* is distinguishable. In that case, a Western Area Power Administration (WAPA) policy stated that if power lines were too low, WAPA must raise them. *Id.* There was no weighing of public policy considerations but, instead, a precise directive to raise power lines in accordance with WAPA's "established policy" if they were found to be too low. *Id.*

Here, there is no such precise "established policy" that eliminates all public policy considerations. In contrast to the WAPA's specific directive to raise power lines that were too low, the Engineer Manual does not define the specific steps to be taken in inspections or specific corrections that USACE employees must perform as to safety-related deficiencies. Even when the Engineer Manual prescribes more specific actions, such as installing fencing and warnings, it does not remove policy considerations as it specifically instructs employees to use these minimally and only where necessary. Doc. 12-2 at 7-8. Thus, when faced with inspections, safety-related deficiencies or the potential erection of fencing or warning signs, USACE employees must weigh policy considerations such as what particular remedial action to take, the cost of potential remedial actions and concerns over correcting one safety-related deficiency at the expense of another.

Each of Graves' claims involves actions or inactions by USACE that were "susceptible to policy analysis." Therefore, the discretionary function exception applies at the second step, as well as the first, and "the bar of sovereign immunity remains."

12

*Dolan v. United States Postal Serv.*, 546 U.S. 481, 485 (2006). This action must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## V. CONCLUSION

For the reasons stated herein, the defendant's motion (Doc. 12) to dismiss is **granted** and this case is **dismissed with prejudice**. Judgment **shall enter** in favor of the United States of America.

**IT IS SO ORDERED** this 11th day of March, 2024.

_____
Leonard T. Strand
United States District Judge